1 | Anton "Tony" N. Handal (SBN 113812)
2 | thandal@murchisonlaw.com
**MURCHISON & CUMMING, LLP**
3 | 750 B Street, Suite 2550
4 | San Diego, California 92101-8114
Telephone: (619) 544-6838
5 | Facsimile: (619) 544-1568
6 |
**Attorneys for Plaintiff, RACE WINNING**
7 | **BRANDS, INC.**
8 |
9 |
10 | **UNITED STATES DISTRICT COURT**
11 | **CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA**

| RACE WINNING BRANDS, INC. | CASE NO.   8:22-cv-1446 |
|---|---|
| A Delaware Corporation | The Hon. |
| | |
| Plaintiff, | **COMPLAINT FOR:** |
| | 1. **VIOLATION OF CAL. PENAL** |
| vs. | **CODE § 502.** |
| | 2. **VIOLATION OF THE** |
| MARK GEARHART, an individual; | **COMPUTER FRAUD AND** |
| | **ABUSE ACT 18 U.S.C. § 1030.** |
| Defendant. | 3. **VIOLATION OF, 18 U.S.C. §§** |
| | **1836,** *et seq.* **(DTSA).** |
| | 4. **VIOLATION OF CAL. CIV. CODE** |
| | **§ 3426.1 (CUTSA).** |
| | 5. **BREACH OF CONTRACT.** |
| | 6. **TORTIOUS INTERFERENCE OF** |
| | **CONTRACT.** |
| | 8. **UNFAIR COMPETITION.** |
| | 9. **CIVIL THEFT.** |
| | 10. **VIOLATION OF CALIFORNIA** |
| | **CIVIL CODE §§ 17200,** *et seq.* |
| | **(UCL).** |
| | |
| | **JURY DEMAND** |

1

Plaintiff Race Winning Brands, Inc. (hereinafter "RWB" or "Plaintiff"), for its Complaint against Defendant, avers and alleges:

## PARTIES

1.      RWB is a privately held corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 7201 Industrial Park Boulevard, Mentor, Ohio, 44060.

2.      Over the past 100 years, RWB has grown into the world's leading manufacturer of racing and high-performance parts sold in automotive and powersports markets, including both engine and drive-line performance components.

3.      RWB has many direct competitors in multiple markets, including Holley Performance Parts, Inc. located in the State of Kentucky (hereafter "Holley"). Holley directly competes with RWB in certain existing parts markets and RWB to anticipates that Holley will expand its business into new markets, such as the performance-piston market, in direct competition with RWB.

4.      Defendant, Mark Gearhart (hereafter "Gearhart") is a former employee of RWB. Gearhart worked for RWB out Cypress, California and at all times material was a resident of the State of California.

## JURISDICTION AND VENUE

5.      This Court has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the Claims at issue arise under the laws of the United States, specifically the Federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836, et seq. and 18 U.S.C. § 1030.

6.      This Court has supplemental jurisdiction over other Claims brought by RWB pursuant to 28 U.S.C. § 1367 because they form part of the same case or controversy as the Claims over which this Court has original subject matter jurisdiction.

7.      Jurisdiction is also proper in this Court pursuant to 28 U.S.C. § 1332 because RWB and Gearhart are citizens of different states, and the amount in controversy exceeds $75,000.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2) because Gearhart worked for RWB in Cypress, California with is in this Judicial District, and because a substantial part of the events and/or omissions giving rise to the claims herein occurred in this Judicial District.

## FACTUAL ALLEGATIONS

9.     RWB manufactures racing and high-performance parts sold in automotive and powersports markets.  Sean Crawford, Mark Gearhart, and Evan Perkins are former employees of RWB. Crawford worked for RWB in its Mentor, Ohio headquarters, while Perkins and Gearhart worked out of RWBs' offices in Cypress, California. After leaving RWB' employment, all three agreed to work for RWB' direct competitor, Holley Performance Parts, Inc.

10.     In March 2017, while working as the Director of Marketing, Crawford entered into a written confidentiality agreement with RWB and was promoted to President of Race Winning's, J.E. Pistons Division. Also in March 2017, Crawford entered into a stock grant agreement that contained confidentiality provisions and restrictions against unfair competition for two years following the termination of his employment. In reliance on those agreements, RWB entrusted Crawford with proprietary confidential and trade secret information.

11.     Before Crawford terminated his employment with RWB, he accessed or copied RWB' monthly sales forecast and J.E. Piston's website updates, all of which is confidential and proprietary. Additionally, Crawford visited RWBs' Google drive in April and May 2020 for a reason other than the performance of his duties as an employee of RWB which were without RWB' consent or approval. RWB believes that Crawford agreed to work for Holley before terminating his employment and took RWBs' confidential and proprietary trade secret information with him to use for the betterment of Holley's business.

12.     In September 2017, RWB hired Evan Perkins in California as its Manager of Content Marketing. As part of his employment, Perkins also entered into a written

confidentiality agreement and received access to RWBs' confidential information and trade secrets.

13.     Perkins terminated his employment with RWB effective May 5, 2020, however before leaving RWB' employment, he performed a full backup of his RWB computer to an external digital hard drive and deleted all of the emails from his RWB computer before returning it.  RWB is informed, believes, and alleges that Perkins agreed to work for Holley Performance Parts before leaving Race Winning's employment.

14.     In April 2016, RWB hired Mark Gearhart to work from RWBs' offices in Cypress, California. In March 2017, while working as Manager of Marketing, Gearhart entered into a written confidentiality agreement that also contained a non-solicitation clause providing that Gearhart would not directly or indirectly induce or attempt to induce any RWB employee to change his or her employment with RWB for one year following termination of his employment. In reliance on the confidentiality agreement, RWB entrusted Gearhart with proprietary confidential and trade secret information.

15.     Gearhart's written Confidential Information, Non-Solicitation and Intellectual Property Agreement with RWB (hereafter the "CA") provided in relevant part that Gearhart:

"will not use, reveal, share, provide access to, transfer, copy, distribute, publish, or otherwise disclose to any unauthorized person or use for [his] own account, any Confidential Information . . . after employment"

16.     The CA went on to define Confidential Information to include:

"all information, observations, and data in any form or medium relating to or concerning the past, current or future business, technologies, activities or operations of the Company or any of its affiliates"

17.     With respect to other employees, the CA provided that:

"for one year following the termination of your employment with the Company, you shall not directly or indirectly through another person or entity, induce or attempt to induce any employee of the Company Group to suspend, decrease or terminate their employment or otherwise interfere with the relationship between the Company Group an any employee of the

Company Group."

18.    Also, at the time of his hire, Gearhart was provided a copy of the RWBs' Employee Handbook (hereafter "EH") which provided in pertinent part:

> No Race Winning Brands or Race or Winning Brands related information, including without limitation, documents, notes, files, records, oral information, emails, computer files or similar materials (except in the ordinary course of performing duties on behalf of the company) may be removed from Race Winning Brands premises without permission from the CEO's office. Additionally, the contents of company records and/or information otherwise obtained in regard to business matter(s) may not be disclosed to anyone, except where required for a legitimate business purpose. Employees shall not disclose any trade secrets or confidential information, purposely or inadvertently (through casual conversation) to any unauthorized person inside or outside the company. (EH - pg. 9)

19.    Following his employment RWB entrusted Gearhart with its proprietary confidential and trade secret information that included, but is not limited to:  RWBs' three-year market strategy; RWBs' future products research and development information; RWBs' engineering drawings that included certain failure issues and its other challenges with products; RWBs' product cost and pricing; RWBs' quality reporting and updates; RWBs' customer lists, customer contacts and customer sales; RWBs' event information; RWBs' organizational charts and the identity of key employees; and, RWBs' "go-to-market" strategy, promotions and sales.

20.    On March 27, 2020, Gearhart terminated his employment with RWB and executed a written Separation Agreement and Release (hereafter "SA") that reiterated his obligations to RWB.  The SA provided at Section III (C)(ix) that:

> [He] shall return to RWB any and all RWB property (including copies thereof) currently in [his] possession or control, including, but not limited to, any and all files, memoranda, identification cards, keys, correspondence, security listings, financial records, computer hardware and software, laptop, cell phone(s), marketing equipment and any developed RWB programs, systems operations, codes, customer lists, benefit standards, personnel files, personnel lists, custom lists or the like, whether such material shall be written instruments or tapes and electronic

and/or recorded format, within seven (7) days of his last day of employment with RWB.

21.   At section III(F) of the SA, Gearhart covenanted:

to disclose, directly or indirectly, to any other person or entity . . . (b) any confidential or proprietary information of RWB or any of its affiliated companies or business partners ("Confidential Information") (specifically including manufacturing operation practices, designs, volumes, quantities, pricing, margins, key customer profiles, RWB software, programs or operations systems, or any other information not generally known to the public), which he acquired as an employee of RWB, or as an employee of a predecessor to RWB.

22.   Apparently bitter and unhappy, Gearhart commence a retaliation campaign against RWB.  Between March 31, 2020, and May 14, 2020, Gearhart secretly and without authorization logged into RWBs' HubSpot computer database sixteen different times to access and download RWBs' confidential information and trade secrets.

23.   Gearhart knew that RWBs' HubSpot was a warehouse of confidential and proprietary information and trade secrets.  Gearhart was not authorized to access the HubSpot, but surreptitiously without RWBs' knowledge or consent.  Once in the HubSpot, Gearhart downloaded and stole for his own benefit, RWBs' confidential information and trade secrets.

24.   To cover his tracks, Gearhart data scrubbed at least one of RWBs' computers and refused to provide RWB with the passwords for computers he used as an RWB employee.  The act of scrubbing data evidence Gearhart's intent to surreptitiously steal and covert to his own use, RWBs' confidential and proprietary information and trade secrets.  Gearhart continues to refuse wantonly, maliciously, and persistently to provide his passwords or account for the data that is now missing.

25.   RWB is informed and believes that Gearhart immediately joined Holley Performance Parts, Inc., (hereafter "Holley") Holley is RWBs' closest competitors. RWB is informed and believes that Holley knew that Gearhart worked for RWB and knew with substantial certainty what information he held concerning RWB.

26. RWB is informed and believes that Holley knew Gearhart had a legal duty to preserve RWBs' proprietary, confidential information and trade secrets without disclosing or using such confidential information to the benefit of one of RWBs' existing direct competitors.

27. Not satisfied with the theft of RWBs' confidential and proprietary trade secrets, and his decision to work for Holley, Gearhart went after other of RWBs' employees, ultimately succeeding in taking Perkins with him to Holley.

28. Gearhart's acts as alleged here, constitute a wanton and malicious civil theft, conversion, and misappropriation of RWBs' confidential and proprietary trade secret information.

29. RWB alleges that it has suffered damages, including, without limitation, damages, in excess of $75,000.

## FIRST CLAIM FOR RELIEF

## VIOLATION OF CAL. PENAL CODE § 502

## (UNAUTHORIZED COMPUTER ACCESS)

30. RWB realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs of this Complaint.

31. California has a strong policy in favor of protecting digital data. That policy is articulated in California Penal Code § 502 which makes violations of the Code criminal acts bearing criminal penalties.

32. Penal Code § 502 also creates a private right of action that entitles the owner or lessee of a computer, computer system, computer network, computer program, or data to bring a civil action against the violator for compensatory damages and injunctive relief or other equitable relief for damage or loss by reason of a violation of any of the provisions of Section 502(c). (See Cal. Penal Code § 502(e)).

33. Section 502(c)(1) allows a private right of action against anyone who knowingly accesses and without permission, alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network to devise or

execute any scheme or artifice to defraud, deceive, or extort, or wrongfully control or obtain money, property, or data.

34.     Section 502(c)(2) creates a private right of action against anyone who knowingly accesses and without permission, takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.

35.     Section 502(c)(3) creates a private right of action against anyone who knowingly and without permission, uses or causes to be used computer services.

36.     Section 502(c)(7) creates a private right of action against anyone who knowingly and without permission, accesses or causes to be accessed any computer, computer system, or computer network.

37.     As alleged, Gearhart, violated and may be continuing to violate California Penal Code §§ 502(c)(1), (2), (3), and (7) by knowingly accessing and without permission using, some or all of the following misappropriated data from RWBs' computer, computer system, email accounts, and computer network (hereafter the "Misappropriated Data"):

                  a.  RWBs' three-year market strategy.

                  b.  RWBs' future products research and development information.

                  c.  RWBs' engineering drawings.

                  d.  RWBs' product failure analysis.

                  e.  RWBs' product quality challenges.

                  f.  RWBs' product cost.

                  g.  RWBs' product pricing.

                  h.  RWBs' quality reporting and QC updates.

                  i.  RWBs' customer lists, customer contacts and customer sales.

                  j.  RWBs' event information.

k. RWBs' organizational charts with the identity of key employees; and,

38.   RWBs' "go-to-market" strategy, promotions, and sales. RWB is informed, believes, and alleges that Gearhart is using the Misappropriated Data to devise or execute a scheme obtain money, property, or data, for the benefit of his new employer, Holley. RWB also alleges that Gearhart used the Misappropriated Data to help him secure a new job with Holley and to gain customers and business opportunities that he would not otherwise have earned.

39.   Gearhart knowingly, intentionally, and without permission violated California Penal Code Section 502 by, accessing RWBs' computers, computer system, email accounts, and/or computer network; adding to, altering, damaging, deleting, destroying, changing the passwords to and/or otherwise using RWBs' data, computers, computer system, email accounts, or computer network; and/or taking, copying, or using data from RWBs' computers, computer system, email accounts, or computer network.

40.   RWB is informed, believes, and alleges that Gearhart's violations of the California Penal Code started in March of 2020 and continue to this day.

41.   RWB was harmed, damaged and continues to be harmed and damaged by Gearhart's knowing and unauthorized access and/or use of the Misappropriated Data from RWBs' computers, computer system, computer network, emails, and/or data, entitling RWB to general damages, compensatory damages, and injunctive relief or other equitable relief, and reasonable attorneys' fees as permitted by California Penal Code sections 502(e)(1) and (2).

42.   As an actual and proximate result of Gerhart's conduct, RWB suffered losses including, but not limited to, the internal and external investigation costs associated with identifying the extent of Gearhart's wrongful conduct, which were reasonably and necessarily incurred to verify whether its computer systems, computer network, computer programs, and data were or were not altered, damaged, or deleted by Gearhart.

43.     Additionally, RWB is entitled to injunctive relief and other equitable relief, including, without limitation, permanent injunctive relief, restitution, and disgorgement of all profits or other benefits that Gearhart obtained in connection with his illegal conduct

44.     Gearhart committed the acts alleged herein maliciously, fraudulently, and with the wrongful and deliberate intention of injuring RWB and to benefit himself and Holley.  RWB alleges on information and belief that Gearhart acted with an improper motive amounting to malice, fraud, and conscious disregard of RWBs' rights, entitling it to recover punitive and exemplary damages from Defendant under California Penal Code § 502(e)(4).

## SECOND CLAIM FOR RELIEF
### VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT
### 18 U.S.C. § 1030

45.     RWB incorporates as though fully set forth herein the allegations contained above as well as all allegations stated below.

46.     RWBs' computer, email, and other confidential information was electronically stored in RWBs' servers including its HubSpot. At all relevant times, they were accessed and used in interstate commerce or communication and therefore qualify as "protected computer(s)" under the Computer Fraud and Abuse Act (hereafter "CFAA").

47.     RWB is informed, believes and alleges that starting in March 2020 and continuing to this day, Gearhart knowingly accessed, without permission, and caused the transmission of a program, information, code, or command, and as a result, intentionally caused damage without authorization, to a protected computer, which constitutes a violation of 18 U.S.C. § 1030(a)(5)(A), 18 U.S.C. § 1030(a)(5)(B), and 18 U.S.C. § 1030(a)(5)(C),

48.     Gearhart's actions caused significant damage and loss in an amount that exceeds $100,000.00. These costs include without limitation lost revenue, reputational

1   damage, attorneys' fees, investigational costs and other direct and consequential
2   damages.

3                    **THIRD CLAIM FOR RELIEF**

4   **VIOLATION OF DEFEND TRADE SECRETS ACT, 18 U.S.C. §§ 1836,** *et seq.*

5        49.   RWB incorporates as though fully set forth herein the allegations contained
6   above as well as all allegations stated below.

7        50.   The Defend Trade Secrets Act (hereafter "DTSA") provides for a private
8   right of action for thefts of trade secrets. 18 U.S.C. § 1836(b)(1).

9        51.   Gearhart's unlawful acquisition of the Misappropriated Dates, all of which
10  constitutes trade secret information, was intended to, and did commercially benefit
11  Gearhart and Holley, his current employer.  In the alternative, Gearhart's unlawful
12  acquisition of the Misappropriated Data did and continues to commercially injure RWB.

13       52.   Gearhart improperly misappropriated and accessed confidential trade secret
14  information in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836,
15  et seq. The information that he stole is highly confidential and is not released to or
16  available to the public.

17       53.   RWB is informed, believes, and alleges that Gearhart continues to use
18  RWBs' Trade Secret information for his own benefit, and for the benefit of Holley or
19  third parties.

20       54.   RWB owns or has the right to use, enforce, and defend its trade secret
21  information. As part of its business, RWD owns the Misappropriated Data, all of which
22  constitutes RWBs' confidential and proprietary Trade Secrets.

23       55.   RWBs' trade secrets are not intended to be disclosed to persons outside of
24  its organization and RWB purposefully takes steps to keep such information highly
25  confidential and safeguard it's from disclosure.

26       56.   Among other things, RWB requires all its employees, to include Gearhart,
27  to sign agreements and/or conform to policies to protect its proprietary information, and
28  confidential trade secrets, information. RWB also instructs its employees not to disclose

---

11
COMPLAINT

1  internal information to third parties. RWB takes security measures and other measures
2  to protect its trade secrets and other confidential information that is stored in electronic
3  and hard-copy formats, such as assigning pass-codes and data security instruction.

4      57.   RWBs' Misappropriated Data and Trade Secrets have independent
5  economic value and derive substantial, independent economic value from not being
6  generally known to the public or to competitors, who would obtain economic value from
7  the information. RWB has expended substantial financial and human resources to
8  develop its Misappropriated Data and Trade Secrets, which cannot be easily acquired or
9  replicated by others.

10     58.   RWBs' Misappropriated Data and Trade Secrets are not known to
11 competitors, and not readily ascertainable through proper means by competitors. A
12 portion of RWBs' trade secrets are related to services, or the sale of products used in, or
13 intended for use in, interstate or foreign commerce as defined by 18 U.S.C. § 1836(b)(1).
14 Also, RWB has used, and continues to use the Misappropriated Data and Trade Secrets,
15 to obtain customers and provide services across state lines.

16     59.   Gearhart knew or had reason to know that the Misappropriated Data and
17 Trade Secrets he misappropriated constitute or containe protectable trade secrets that
18 have independent economic value, not generally known to the public or to others who
19 could obtain economic value from the disclosure or use of the information.

20     60.   RWB is informed, believes, and alleges that Gearhart improperly disclosed
21 RWBs' Misappropriated Data and Trade Secrets information to Holley and others, or
22 used RWBs' Misappropriated Data and Trade Secrets information for the benefit of
23 RWBs' competitors.

24     61.   RWB is informed, believes and alleges that at the time of disclosure or use
25 of RWBs' Misappropriated Data and Trade Secrets, Holley knew or had reason to know
26 that the Misappropriated Data and Trade Secrets were: (i) derived from or through a
27 person who had utilized improper means to acquire it; or (ii) acquired under
28 circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) derived

1  from or through a person who owed a duty to the person seeking relief to maintain its

2  secrecy or limit its use.

3  62.    RWB is informed, believes, and alleges that the Misappropriated Data and

4  Trade Secrets misappropriated by Gearhart has and will continue to cause irreparable

5  detriment and harm to RWB.

6  63.    As a result of the damage caused by Gearhart, RWB is also entitled to

7  compensatory damages, and attorneys' fees according to proof.  RWB also alleges that

8  Gearhart's actions and conduct are willful, malicious, and in conscious disregard of

9  RWBs' rights entitling it to exemplary and punitive damages against him.

10  64.    RWB is informed, believes, and alleges that it faces immediate, substantial,

11  and irreparable harm for which there is no adequate remedy at law in violation of the

12  Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq., and related statutes. Accordingly,

13  RWB is entitled to a temporary restraining order, a data turnover order and a preliminary

14  injunction.

### FOURTH CLAIM FOR RELIEF

15

### MISAPPROPRIATION OF TRADE SECRETS

16

### (CALIFORNIA UNIFORM TRADE SECRETS ACT

17

### CAL. CIV. CODE § 3426.1)

18

19  65.    RWB incorporates as though fully set forth herein the allegations contained

20  above as well as all allegations stated below in each cause of action in the Complaint.

21  66.    As part of its business, RWB has generated the Misappropriated Data and

22  Trade Secrets as alleged above which are RWBs' confidential and proprietary

23  information.

24  67.    The Misappropriated Data and Trade Secrets belong exclusively to RWB,

25  are highly confidential, and not intended to be disclosed outside of RWB. RWB actively

26  protects the secrecy of the Misappropriated Data and Trade Secrets by taking reasonable

27  steps to safeguard the information from disclosure and does not release it to the public.

28

68.     RWBs' confidential and proprietary Misappropriated Data and Trade Secrets have independent economic value in that they reflect confidential customer service needs, customer information, business strategies, marketing strategies, and pricing terms. They also include RWBs' strategic plans and marketing strategies.

69.     Gearhart had access to RWBs' Trade Secrets by virtue of his employment with RWB. He improperly misappropriated and accessed confidential RWB trade secret information in violation of the California Uniform Trade Secrets Act, California Civil Code § 3426.1.

70.     The Misappropriated Data and Trade Secrets that Gearhart stole is highly confidential and is not released to or available to the public. At the time of disclosure or use of RWBs' Misappropriated Data and Trade Secrets, Holley knew or had reason to know that the trade secrets were: (i) derived from or through a person who had utilized improper means to acquire it; or (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use.

71.     RWB is informed and believes, and based thereon alleges, that Gearhart and his co-conspirators will continue to use the Misappropriated Data and Trade Secrets to their own economic benefit unless enjoined by a Court.

72.     As a proximate result of Defendant's acts of misappropriation and use of its Trade Secrets, RWB has suffered damages to date based on, among other things, loss of goodwill, damage to its business reputation, and expenses incurred in its efforts to remedy the effects of Defendant's unlawful conduct, in an amount believed to be $5,000,000 million or more.

73.     RWB has been harmed by Gearhart since the misappropriation of RWBs' Misappropriated Data and Trade Secrets gives its competitors, like Holley, a substantial and unfair competitive advantage over RWB. Investigation is continuing, and the full extent of RWBs' injury will be determined at trial.

74.     RWB is informed and believes, and based thereon alleges, that Gearhart acted with oppression, fraud, and/or malice, and has deliberately caused and has intended to cause great economic harm to RWB.  RWB further alleges that Gearhart, committed the acts alleged herein with full knowledge of the wrongfulness of his conduct.

75.     RWB is further informed and believes, and based thereon alleges, that Gearhart's conduct as alleged above was despicable, and carried on with a willful and conscious disregard of RWBs' rights subjecting RWB to unjust hardship. As a result, RWB seeks and award of punitive and exemplary damages sufficient to punish Gearhart for engaging in such conduct and to deter similar conduct on his part in the future.

76.     As a direct and proximate result of Defendant's violations of the California Uniform Trade Secrets Act, RWB has sustained and will continue to sustain irreparable injury, the damages from which cannot now be calculated. Accordingly, RWB is entitled to a temporary restraining order, a turnover order, and a preliminary injunction, along with compensatory and exemplary damages, and attorneys' fees.

## FIFTH CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

77.     RWB realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs of this Complaint.

78.     Gearhart's entered several contracts with RWB to include, the CA, the SA and agreeing to be bound by the EH.  Each contained provisions pertaining to the use and maintenance of confidential and proprietary trade secret information.  The SA set forth other commitments related to non-solicitation of fellow employees.

79.     Gearhart breached several of his obligations under these contracts as more thoroughly described above.  RWB on the other hand has not breached any of its obligations and has fulfilled all its obligations under all its contracts with Gearhart.

80.     Gearhart's breaches have not been forgiven.  Further, RWB has taken no action that may be interpreted as interfering with or waiving Gearhart's performance.

81.   RWB has been damaged as a direct, natural, and proximate result of Gearhart's breaches of his contractual obligations to RWB, in an amount to be proven at trial.

### SIXTH CLAIM FOR RELIEF
### (TORTIOUS INTERFERENCE OF CONTRACT)

82.   RWB realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs of this Complaint.

83.   RWB is informed, believes, and alleges that as further alleged herein, Gearhart aided and abetted and tortiously induced certain other employees to breach the contractual obligations to RWB.

84.   As a direct and proximate consequence of such and other conduct, RWB has been and will continue to be damaged.  Such wrongful conduct was wanton and malicious entitling RWB to exemplary and punitive damages against Gearhart according to proof.

### SEVENTH CLAIM FOR RELIEF
### (UNFAIR COMPETITION AND MISAPPROPRIATION/THREATENED MISAPPROPRIATION OF TRADE SECRETS)

85.   RWB realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs of this Complaint.

86.   RWB possesses confidential and trade secret information and has made reasonable efforts to maintain the secrecy and confidentiality of such information and secrets.

87.   Through improper means, Gearhart knowingly misappropriated, acquired or by improper means used, and/or are threatening to misappropriate, acquire and use, for his own benefit or the benefit of others the RWBs' confidential and proprietary information and trade secrets in violation of Ohio's Uniform Trade Secrets Act (O.R.C. §§1333.61 – 1333.99) and other applicable law.  Through these and other improper means, Gearhart has engaged in unfair competition with RWB.

88.     As a direct and proximate result of such intentional, deliberate, knowing, willful, malicious, wanton, and/or utterly reckless conduct by Defendant, RWB has been and will continue to be damaged.

## EIGHTH CLAIM FOR RELIEF
## CIVIL THEFT AND CONVERSION

89.     RWB realleges and incorporates herein by reference the allegations set forth in the preceding paragraphs of this Complaint.

90.     Defendant Gearhart has intentionally, wrongfully, wantonly and maliciously converted to his own benefit, or to the benefit of a third party, the goodwill and property of RWB to accomplish improper/illicit objectives at the expense and to the damage of RWB and threatens to inevitably do so in the future.

91.     As a direct and proximate result of such and other conduct RWB has been and will continue to be damaged.  The tortiously obtained and unwarranted salary and other benefits realized by the Gearhart through his employment should be ordered disgorged to the full extent they are a product of conversion.

## NINTH CLAIM FOR RELIEF
## UNFAIR BUSINESS PRACTICES

92.     Plaintiff incorporates as though fully set forth herein the allegations contained above.

93.     By the acts alleged in the preceding paragraphs, Gearhart, and his co-conspirators, have committed business acts and practices that are "unlawful" and "unfair" in violation of the Unfair Competition Law ("UCL"), Business & Professions Code§ 17200 et seq.

94.     A fundamental premise of the competitive marketplace is that companies and individuals in business must compete in a fair and ethical manner, working to develop their own clients, business strategies, business relationships, and confidential information using their own efforts, rather than preying on other companies or individuals' valuable assets, ideas, copyrights, trademarks, talent, or work. In egregious

breach of these principles, Gearhart misappropriated through theft, and used for his own benefit, RWBs' confidential and proprietary trade secrets through the deliberate and premeditated unlawful acts.

95.     Specifically, without RWBs' consent, Gearhart acquired and used for himself RWBs' confidential and proprietary business information to undercut it in the highly competitive business market.  Gearhart fraudulently impersonated an authorized person to access RWBs' HubSpot without permission to download RWBs' Misappropriated Data and Trade Secrets.  Such acts impair fair and honest competition and otherwise significantly harms competition in the market for RWBs' products.

96.      Gearhart engaged in unlawful, fraudulent, and unfair business acts and practices. Such acts and practices include, but are not limited to, wrongfully depriving RWB of its rightful ownership interests in their money, intellectual property, assets, property, Trade Secrets, and marketing strategies.

97.     Gearhart's business acts, on behalf of Holley, his employer, as alleged herein were unfair because the substantial harm suffered by RWB outweighs any justification Gearhart may have for engaging in such acts and practices.

98.     RWB will be denied effective and complete remedy absent the relief requested herein.  RWB has suffered and continues to suffer irreparable harm because of the activities alleged herein that cannot be adequately remedied at law unless Gearhart and all persons acting with him, or on his behalf, are enjoined from engaging in further such acts of unfair competition.

99.     Such acts impair fair and honest competition and otherwise significantly harms competition in the market for RWBs' products and services.

100.   Gearhart has been unjustly enriched by such unlawful and unfair practices and in addition to all other relief available should be made to account to RWB for profits and disgorge the same to RWB.

101.   RWB has been harmed as a result of Gearhart's unlawful, unfair and fraudulent business acts and practices. RWB is entitled to (a) recover restitution,

1   including without limitation, all benefits that Gearhart and Holley received because of

2   the unlawful, unfair or fraudulent business acts and practices and (b) an injunction

3   restraining them from engaging in further acts of unfair competition, as alleged herein.

4       102.   RWB has lost and continues to lose business and opportunities that it

5   otherwise could have obtained and consumers at large who were deprived of the value

6   pricing opportunities that RWB could have delivered through open and free channels of

7   business.

8       **WHEREFORE, RWB demands judgment as follows**:

9   A.   Against Gearhart, an amount well in excess of $75,000 as and for

10       compensatory damages, or such amount proven at trial;

11   B.   Granting preliminary and permanent injunctive relief against Gearhart

12       enjoining him, and all those acting with or in concert with him: (i) from

13       further breach or threatened breach of his agreement with RWB and (ii)

14       from use or misappropriation or future use or misappropriation of RWBs'

15       Misappropriated Data and Trade Secrets, together with such other legal and

16       equitable relief as is warranted by the evidence;

17   C.   For a temporary restraining order and permanent injunction enjoining

18       Gearhart and any person or entity acting in concert with him from soliciting,

19       directly or indirectly, by mail, phone, electronic communication, personal

20       meeting, or any other means, any client of RWB who Gearhart, and those

21       acting in concert with him, dealt with, learned about, or whose name

22       became known to them through RWBs' Misappropriated Data and Trade

23       Secrets;

24   D.   Against Gearhart, for punitive and exemplary damages according to proof;

25   E.   Granting preliminary and permanent injunctive relief against each Gearhart

26       and any other person acting in concert with him (i) terminating their

27       unlawful conspiracy(ies), (ii) enjoining them from further conversion or use

28       of RWBs' confidential and trade secret information, and (iii) enjoining

them from tortious interference or attempts to interfere in contractual duties owed to RWB, together with such other legal and equitable relief as is warranted by the evidence;

F.     Granting temporary, preliminary, and permanent injunctive relief against Gearhart, preventing destruction or spoliation, or additional destruction or spoliation of evidence prior to trial, including emails and other electronic evidence, so that RWB can prior to trial accurately ascertain (i) the extent to which RWBs' confidential and trade secret information may already have been shared amongst the Defendant or others to include Crawford, Holley and Perkins, and allow RWB to determine the extent of the damage caused to its corporate goodwill, nationally and internationally;

G.     An order in equity compelling Defendant to disgorge to RWB any and all ill-gotten gains, and a preliminary order requiring the Defendant to sequester and hold in trust their ill-gotten gains pending final outcome of this matter;

H.     Requiring that Defendant bear the costs of this action, jointly and severally, together with RWBs' reasonable attorneys' fees and litigation expenses;

I.     Requiring third parties who are in possession of relevant evidence to preserve under court order any and all evidence they possess which is properly discoverable in this matter; and

J.     Such other legal and equitable relief as is warranted by the evidence.

**A TRIAL BY JURY IS DEMANDED WITH RESPECT TO ALL ISSUES SO TRIABLE.**

July 27, 2022

Respectfully submitted,

**MURCHISON & CUMMING, LLP**

_____/s/Anton Handal_____

Anton N. Handal, Esq. (SBN 113812)

Attorneys for Plaintiff

**To be admitted Pro Hac Vice:**

Stephen H. Jett (#0046821)
One Cleveland Center, Suite 1700
1375 E. Ninth Street
Cleveland, Ohio 44114
Phone: (216)736-4241 / Fax: (216) 736-4241
E-mail: sjett@bdblaw.com

*Attorneys for Plaintiff Race Winning Brands*